IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIA OTILIA GOMES DE
MEDEIROS,

             Plaintiff,                        No. 2:12-cv-0699-EFB

        vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.                  ORDER

_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff's motion for summary judgment is pending.  For the reasons discussed below, the court grants plaintiff's motion and remands the matter for further proceedings.

I.      BACKGROUND

      Plaintiff protectively filed for a period of disability, DIB, and SSI benefits on July 11, 2008, alleging that she had been disabled since May 18, 2007.  Administrative Record ("AR") 55, 123.  Plaintiff's application was initially denied on December 22, 2008, and upon reconsideration on April 21, 2009.  *Id*. at 59-62, 65-69.  On May 20, 2010, a hearing was held

before administrative law judge ("ALJ") Laura Speck Havens. *Id.* at 31-54. Plaintiff was represented by counsel at the hearing, at which she and a Vocational Expert ("VE") testified. *Id.*

On August 31, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I) and 223(d) of the act.[1] *Id.* at 17-25. The ALJ made the following specific findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.    The claimant has not engaged in substantial gainful activity since May 18, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

* * *

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert,* 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3.      The claimant has the following severe impairments: depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

* * *

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Limited to simple repetitive tasks, with a limited ability to deal with coworkers and the public.

* * *

6.      The claimant is capable of performing past relevant work as a warehouse worker (DOT#922.687-058 medium svp 2).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7.      The claimant has not been under a disability, as defined in the Social Security Act, from May 18, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 19-25.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 12, and on February 22, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.  *Id*. at 1-5.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that the ALJ erred by: (1) mischaracterizing and omitting portions of examining psychologist Troy Ewing, M.D.'s opinion; (2) improperly assessing plaintiff's RFC; (3) improperly evaluating plaintiff's subjective complaints and credibility; (4) improperly assessing the lay evidence; and (5) finding that she could perform her past relevant work.[2] Pl.'s Mot. for Summ. J., ECF No. 16-1 at 11-22.

A.   The ALJ Did Not Mischaracterize Dr. Ewing's Opinion

Plaintiff argues that the ALJ erred by mischaracterizing and omitting certain limitations found by Dr. Troy Ewing, the post-hearing consultative examiner, whose opinion the ALJ purported to give "significant weight." *See* AR 24. Specifically, plaintiff refers to Dr. Ewing's opinion that (1) plaintiff's mental deficiencies "*will* limit her ability to handle criticism from

/////

---

[2] Plaintiff's last argument, that the ALJ erred in finding that she could perform her past relevant work, is predicated on the success of arguments (1) and (2), listed above. As discussed below, arguments (1) and (2) lack merit. As a result, plaintiff's last argument must also fail.

1   supervisors" and (2) that work pressures "*will* exacerbate [her] mental health symptoms."  AR

2   502-503 (emphasis added).

3       First, plaintiff contends that the ALJ mischarcterized  Dr. Ewing's opinion that plaintiff's

4   mental deficiencies "will" limit her ability to handle criticism from supervisors, by substituting

5   the word "will" with "might."  AR 24.  In addition, plaintiff contends that the ALJ failed to

6   properly consider this "significant" limitation in assessing plaintiff's residual functional capacity

7   ("RFC").[3]  ECF No. 16 at 13.  The court disagrees.

8       Dr. Ewing found that plaintiff's impairment *would* limit her ability to handle criticism

9   from supervisors.  He also found that her ability to interact with supervisors was only *slightly*

10   limited.  AR 500, 502.  A supervisor's job is to direct and to oversee.  Typical interactions with a

11   supervisor necessarily involve some measure of criticism.  Read together, Dr. Ewing's findings

12   can be reasonably interpreted as suggesting, as the ALJ found, that plaintiff's mental deficiencies

13   *might* limit her ability to handle criticism from supervisors.  Thus, the ALJ's use of the word

14   "might" was not a mischaracterization of Dr. Ewing's opinion and was not error.  *See, e.g.,*

15   *Ponce v. Astrue*, No. C-06-03543-RMW, 2010 U.S. Dist. LEXIS 5143, at *15 (N.D. Cal. Jan. 21,

16   2010) (where a "difference in terminology is not materially significant . . . when the statements

17   are viewed in context," plaintiff has not established error).

18       Regardless, plaintiff's limitation in this regard was not "significant," as plaintiff

19   contends.  Dr. Ewing found that plaintiff's ability to interact with supervisors was only slightly

20   impaired.  Dr. Ewing's evaluation form defined "slight" as "mild limitations . . . but the

21   individual can generally function well."  AR 499.  The ALJ was not required to include Dr.

22   Ewing's finding that plaintiff can generally function well when interacting with supervisors into

23

24       [3] A claimant"s "residual functional capacity" is the most a claimant can still do despite
his limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R.

25   § 404.1545(a)).  The RFC assessment considers only functional limitations and restrictions that
result from the claimant's medically determinable impairment or combination of impairments.

26   Social Security Ruling 96-8p, 1996 SSR LEXIS 5.  In assessing a claimant's RFC, the ALJ must
consider all of the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(2), (3).

1    plaintiff's RFC.  *See, e.g., Evenson v. Astrue*, No. 09-6105-TC, 2010 U.S. Dist. LEXIS 61856, at

2    *12-13 (D. Or. May 6, 2010) (ALJ not required to include "moderate" limitation in RFC

3    assessment given that plaintiff was "still able to function satisfactorily" in the area at issue).

4    Accordingly, plaintiff has not demonstrated error in this regard.

5         Plaintiff also focuses on Dr. Ewing's opinion that work pressures will exacerbate

6    plaintiff's mental health symptoms.  *See* AR 503 (noting that "prolonged pressure" will

7    exacerbate plaintiff's mental health symptoms).  She argues that the ALJ's failure to incorporate

8    this limitation renders the RFC finding deficient.  As a threshold matter, Dr. Ewing's opinion

9    regarding plaintiff's ability to respond to workplace pressures went beyond his statement that

10   "prolonged pressure" would exacerbate plaintiff's mental health symptoms.  Dr. Ewing also

11   found that plaintiff has a fair ability to handle normal work related stress from a competitive

12   work environment, and that her ability to respond to work pressures in a usual work setting is

13   moderately affected by her impairment.  AR 24, 498, 500.  In addition, Dr. Ewing found that

14   plaintiff's ability to respond appropriately to changes in a usual work setting is moderately

15   impaired.  AR 24, 500.  Contrary to plaintiff's contention, the ALJ did not ignore these assessed

16   limitations.

17        "An ALJ may synthesize and translate assessed limitations into an RFC assessment

18   without necessarily repeating each functional limitation verbatim in the RFC assessment."

19   *Martin v. Astrue*, No. 2:12-cv-0033-KJN, 2013 U.S. Dist. LEXIS 19651, at *28 (E.D. Cal. Feb.

20   12, 2013) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).

21   Moreover, an RFC adequately captures a claimant's limitations where it is consistent with the

22   limitations in the work-related abilities identified in the medical evidence.  *Rogers v. Comm'r of

23   Soc. Sec. Admin.*, 490 Fed. Appx. 15, 2012 U.S. App. LEXIS 14923 (9th Cir. 2012).[4]  In

24   formulating an RFC limiting plaintiff to jobs with "simple repetitive tasks, with a limited ability

25   ───────────────

26        [4]  Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

1    to deal with coworkers and the public," the ALJ adequately incorporated Dr. Ewing's opinions.

2    AR 20; *see also* AR 497 (finding that plaintiff has a fair ability to interact with coworkers and

3    the public).  Plaintiff does not point to any medical evidence identifying a concrete job

4    restriction resulting from plaintiff's ability (or inability) to handle prolonged work pressures.

5    The RFC properly accounted for Dr. Ewing's opinion regarding plaintiff's fair to moderate

6    limitations in this regard.  Thus, plaintiff has failed to demonstrate that the ALJ did not fully and

7    accurately incorporate Dr. Ewing's opinion.

8          B.      <u>The ALJ Did Not Improperly Assess Plaintiff's RFC By Failing to Fully Account</u>

9                 <u>for Her Own Finding of Certain Moderate Limitations</u>

10         Plaintiff also argues that the ALJ improperly assessed plaintiff's RFC in other ways.

11   Specifically, plaintiff claims that despite finding that plaintiff has "moderate difficulties" in

12   concentration, persistence, or pace and in social functioning, the ALJ failed to account for these

13   difficulties in the RFC.  Indeed, the court notes that in assessing the severity of plaintiff's

14   depression and anxiety at step three of the sequential evaluation process, the ALJ stated that

15   plaintiff has "moderate" difficulties in social functioning and concentration, persistence, or

16   pace.[5]  Having reviewed the record, it appears that the ALJ's mention of "moderate difficulties"

17   was a typographical error.

18         The ALJ did not cite to any portion of the record in referencing these "moderate"

19   difficulties.  *See* AR 20.  Further, plaintiff concedes that "[a] review of the record does not make

20   obvious the basis/bases of the ALJ's finding of moderate limitations with regard to

21   concentration, persistence or pace."  ECF 16-1 at 16.  Although plaintiff points to evidence in the

22   record documenting plaintiff's fair to poor concentration and attention, and constant or frequent

23   anxiety, none of the referenced records document "moderate" difficulties in plaintiff's

24   concentration, persistence, or pace or social functioning.  *See* ECF No. 16-1 (citing AR 228, 232,

25   _____

26        [5] The limitations identified in step three are "*not* an RFC assessment."  *See* AR 20 (emphasis added).

                        7

321, 326, 332, 348, 355, 366, 376, 389-90, 413).  Notably, in assessing plaintiff's RFC, the ALJ gave "appropriate weight" to the findings of Dr. Stevenson, who found that plaintiff had only "mild" limitations in maintaining social functioning and concentration, persistence or pace.  AR 22.  Given the ALJ's clear crediting and reliance upon Dr. Stevenson's opinion, coupled with the lack of support for determining that instead, plaintiff has "moderate" limitations, the ALJ's mention of "moderate" difficulties in her step three analysis is inexplicable and appears to have been a typographical error.[6]  Thus, the RFC is not inadequate for failing to account for moderate difficulties in maintaining social functioning and concentration, persistence or pace.

As noted, the evidence showed that plaintiff has only "mild" limitations in maintaining social functioning and concentration, persistence or pace.  Plaintiff has not shown that the RFC is inadequate for failing to incorporate these limitations.  In addition to Dr. Stevenson's opinion, the ALJ relied on medical records showing that plaintiff's mental condition was not so severe as to prevent her from performing simple, routine work, with limited interactions with coworkers and the public.  *See* AR 21-25.   The ALJ accurately reflected these restrictions, along with Dr. Stevenson's finding of certain "mild" limitations, in concluding that plaintiff:

> has the residual functional capacity to perform a full range of work of all exertional levels but with the following nonexertional limitations: Limited to simple repetitive tasks, with a limited ability to deal with coworkers and the public.

AR 20.  Thus, plaintiff has not demonstrated that the RFC is inadequate for failing to incorporate plaintiff's limitations in social functioning and concentration, persistence or pace.  *See, e.g., Stubbs-Danielson*, 539 F.3d at 1174 (9th Cir. 2008) (ALJ's finding that plaintiff could do "simple tasks" incorporated plaintiff's pace and mental limitations).

/////

/////

---

[6] As discussed below, the court finds remand appropriate on other grounds.  On remand the ALJ may address and correct any typographical error.

1        C.      The ALJ Erred in Assessing Plaintiff's Credibility

2        Next, plaintiff argues that the ALJ erred in evaluating plaintiff's subjective complaints

3   and credibility.  Under Ninth Circuit law, an ALJ must engage in a two-step analysis when

4   determining whether a claimant's testimony regarding subjective pain or symptoms is credible:

5            First, the ALJ must determine whether the claimant has presented objective
             medical evidence of an underlying impairment "which could reasonably be
6            expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947
             F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted).  The
7            claimant, however, "need not show that her impairment could reasonably be
             expected to cause the severity of the symptom she has alleged; she need only
8            show that it could reasonably have caused some degree of the symptom." *Smolen
             v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996).  "Thus, the ALJ may not reject
9            subjective symptom testimony . . . simply because there is no showing that the
             impairment can reasonably produce the degree of symptom alleged." *Id.*; *see also
10           Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's
             testimony as to the severity of symptoms merely because they are unsupported by
11           objective medical evidence.").

12           Second, if the claimant meets this first test, and there is no evidence of
             malingering, "the ALJ can reject the claimant's testimony about the severity of
13           her symptoms only by offering specific, clear and convincing reasons for doing
             so." *Smolen*, 80 F.3d at 1281; *see also Robbins*, 466 F.3d at 883 ("[U]nless an
14           ALJ makes a finding of malingering based on affirmative evidence thereof, he or
             she may only find an applicant not credible by making specific findings as to
15           credibility and stating clear and convincing reasons for each.").

16   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  To support a lack of credibility

17   finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant

18   is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*,

19   547 F.3d 1101, 1105 (9th Cir. 2008); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)

20   (to reject a claimant's subjective complaints, ALJ must provide "specific, cogent reasons for the

21   disbelief" and unless affirmative evidence shows the claimant is malingering, ALJ's reasons

22   must be "clear and convincing").

23        Here, the ALJ's specific reasons for discounting plaintiff's subjective complaints are

24   difficult to extract.  As discussed below, none of the reasons suggested in the ALJ's decision

25   clearly and convincingly discount plaintiff's credibility.  First, in assessing plaintiff's credibility,

26   the ALJ noted the following:

1

2

3

4

5

6

7

8

9

> On December 11, 2007, the claimant was admitted to San Joaquin County Mental Health Services as a danger to herself and gravely disabled due to depression and suicidal thoughts.  Dr. Paramjit Gill diagnosed the claimant with Major Depressive Disorder Recurrent without psychotic features and assessed a GAF score of 30.  A GAF score [between] 21-30 usually indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas[,] which does not appear to be that state that the claimant was in.
>
> There are numerous inconsistencies in the record which cannot be easily reconciled.  For example the records describe the claimant at the time of admission as calm, cooperative, alert and oriented to person and place.  At the same time[,] she is then described as depressed, anxious, tearful, and confused with impaired memory.  Unless the claimant was cycling through different states, alert and confused as well as calm and anxious[, these] are opposite states and mutually exclusive conditions.

10  AR 21 (internal citations omitted).  While the ALJ notes that unspecified records offer

11  conflicting descriptions of plaintiff's mental state and the ALJ's implicit questioning of the

12  reliability of the author of the report(s), she does not explain how such discrepancies, as

13  perceived by others, bear on *plaintiff's* credibility.

14        Next, the ALJ noted plaintiff's conflicting representations as to whether she had suicidal

15  ideas:

16

17

18

> Moreover, the claimant is documented as having suicidal ideas with a vague plan and a history of past attempts.  This assertion of suicidal ideas comes into conflict with the claimant's denial of suicidal ideas on three separate occasions, first when evaluated on the Unit the claimant denied suicidal ideas, again on Mental Status Examination and lastly at the time of discharge.

19  AR 21 (internal citations omitted).  This evidence merely shows that after being admitted to the

20  hospital with suicidal thoughts, plaintiff subsequently denied having such thoughts.  This is not

21  evidence of prior inconsistent statements bearing on plaintiff's credibility.  The fact that

22  plaintiff's professed mental state improved after being admitted to the hospital and receiving

23  treatment, should hardly be held against her.

24  /////

25  /////

26  /////

Next, the ALJ pointed out that:

> Records from Dr. Michael Smith, the claimant's former treating psychiatrist from August 2006 through July 2008 indicate treatment for the claimant's mental impairments. However, it is noteworthy that the claimant never indicated suicidal ideation, and her condition improved upon adjustment of her medication regimen.

AR at 22 (internal citations omitted). It is not clear how this improvement in plaintiff's mental state, while she was receiving treatment, relates to plaintiff's credibility. The ALJ does not point to any testimony that is undermined by this improvement in plaintiff's condition.

Lastly, the ALJ discounted plaintiff's credibility based on other circumstances surrounding plaintiff's December 2007 hospital stay:

> Additional support for the lower level of severity of the claimant's mental condition comes from the claimant's length of stay and her observed behavior during the two days. . . . [C]laimant's stay "was rather short" and contrary to her complaints of poor sleep, the claimant was able to sleep and observed the next day with a bright mood, denying suicidal ideation, and after speaking to her husband wanted to be discharged . . . . The claimant was discharged on December 13, 2007 with the same diagnosis but a GAF score of 50.

AR 21-22 (internal citations omitted). The fact that plaintiff's December 2007 hospitalization was only two days long does not clearly and convincingly lead to an adverse credibility finding. As plaintiff notes in her reply, the ALJ's focus in this regard fails to consider "waxing and waning nature" of mental illness. ECF No. 18 at 5 (citing *Punzio v. Astrue*, 630 F.3d 704, 710-11 (7th Cir. 2011)). In addition, the fact that plaintiff was able to sleep does not negate her complaints of sleeping poorly. Even if viewed as an example of an inconsistency between an objective finding and a claimant's subjective claim, such an inconsistency could not be the sole reason for rejecting a claimant's subjective complaints. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (1997). As discussed above, there are no other reasons for discounting plaintiff's credibility. Accordingly, the court finds the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility.

/////

/////

11

1          D.      The ALJ Erred in Failing to Consider Lay Evidence

2          Plaintiff further argues the ALJ erred when she failed to consider the third party

3   testimony of Lucy Gonzales, plaintiff's cousin.  ECF No. 16-1 at 20-21.  Ms. Gonzales reported

4   that plaintiff no longer cares about how she looks, no longer smiles, and "does not care about

5   life."  AR 154-156.  She further averred that plaintiff has no energy and is sad all of the time.

6   AR 157.  Ms. Gonzales also reported that plaintiff's conditions have affected her ability to

7   remember, concentrate, complete tasks, understand, and follow instructions.  AR 159.

8          Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

9   into account, unless she expressly determines to disregard such testimony and gives reasons

10  germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  An

11  ALJ must consider this testimony in determining whether a claimant can work.  *Stout v. Comm'r*

12  *of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d) (4);

13  *Smolen*, 80 F.3d at 1288.  In order to discount the testimony of a lay witness, the ALJ must "give

14  reasons that are germane to each witness."  *Id.* at 1053; *see also Valentine v. Comm'r of Soc.*

15  *Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

16         The Commissioner concedes that the ALJ failed to address Ms. Gonzales's testimony.

17  ECF No. 17 at 8.  Given the standards set forth above, the court must find that the ALJ erred in

18  failing to assess Ms. Gonzales's testimony.

19  IV.    CONCLUSION

20         Accordingly, IT IS ORDERED that:

21         1.  Plaintiff's motion for summary judgment is granted;

22         2.  The Clerk is directed to enter judgment in plaintiff's favor; and

23         3.  The matter is remanded for further proceedings consistent with this opinion.

24  DATED:  September 26, 2013.

25                                         EDMUND F. BRENNAN

26                                         UNITED STATES MAGISTRATE JUDGE